# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LYNNE CHARRON, | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Civil Action No.: |
|  | ) | |
| THOMAS W. CHARRON JR., | ) | |
| Defendant. | ) | |

## COMPLAINT

The plaintiff, Lynne Charron ("Plaintiff" or "Mrs. Charron"), brings this action against the defendant, Thomas W. Charron Jr. ("Defendant" or "Mr. Charron") for statutory civil penalties, damages and attorney's fees and costs related to Defendant's violation of federal and state wiretap laws, intrusion on Plaintiff's seclusion, violation of her right to personal privacy, negligent and intentional infliction of emotional distress. Defendant is Plaintiff's estranged husband, from whom Plaintiff has been separated since January 2020. Plaintiff's claims are based on her discovery of latent evidence that Defendant secretly placed hidden audio recording devices in Plaintiff's car and home, including her bedroom, for a duration of months in which the parties were estranged. As alleged herein, Defendant recorded, and used to his advantage, Plaintiff's private conversations with her attorneys, psychotherapist, medical professionals, her children, and numerous third parties, all without the consent or knowledge of any party to the recordings.

## THE PARTIES

1. The Plaintiff, Lynne Charron, also known as Lyndsay Charron, is an individual who resides in Wellesley, Massachusetts.

2. The Defendant, Thomas W. Charron Jr., is an individual who presently intermittently resides at the Charron family vacation home in Oak Bluffs Martha's Vineyard, Massachusetts from time to time.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's claim under the Federal Wiretap Act, 18 U.S.C. § 2520, pursuant to 28 U.S.C. § 1331.

4. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the claims form part of the same case or controversy as the claim on which federal question jurisdiction is based.

5. Venue in this matter is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in this judicial district.

## FACTS

6. Plaintiff and Defendant were married on November 28, 1992.

7. Plaintiff and Defendant had two children during their marriage, a daughter born in 1995 and a son born in 2002.

8. Plaintiff and Defendant purchased a home located at 209 Cliff Road, Wellesley, Massachusetts (the "Cliff Road Home") in 2011, which served as the primary family residence until August 2020.

9. The relationship between Plaintiff and Defendant became strained over the years, and they engaged in marriage counseling.

10. In September 2019, Plaintiff made the decision to go back to school, and began culinary education and training at Boston University.

11. Upon information and belief, in September 2019, Defendant began surreptitiously preparing to file for divorce.

12. Between September 2019 and December 2019, Defendant made significant and unilateral changes to the couple's joint financial holdings by moving assets out of Plaintiff's reach in an apparent attempt to unfairly hinder or compromise Plaintiff's rights and ability to negotiate fairly or litigate on a level playing field in a future divorce proceeding.

13. On December 19, 2019, Plaintiff and Defendant began seeing a new marriage counselor and psychotherapist, Dr. Robert Tella.

14. Plaintiff spoke with and was counseled by Dr. Tella both individually and jointly with Defendant.

15. Plaintiff understood that her individual and conjoined discussions with Dr. Tella were confidential and protected under the psychotherapist-patient privilege.

16. In January 2020, Defendant filed for divorce from Plaintiff, citing a breakdown of the marital relationship. Defendant did not provide advance notice of this filing to Plaintiff.

17. Between January and April 2020, Plaintiff and Defendant engaged in discussions concerning division of assets, expenses, and Plaintiff's need to find a new home for her and the couple's then 17- and 24-year-old children to live in.

18. Defendant attempted to prevent Plaintiff from accessing funds to purchase a new home. Despite Defendant's efforts, on or about April 6, 2020, Plaintiff authorized the purchase of a property on Chestnut Street in Wellesley (the "Chestnut Street Home"), which she planned to move into in the summer of 2020.

19. Days later, on April 13, 2020, Defendant moved to dismiss his complaint for divorce and moved out of the Cliff Road Home and into the family vacation home in Oak Bluffs,

Martha's Vineyard, MA, purportedly to provide further physical separation so that Plaintiff and Defendant could attempt to work on their marital issues.

20. In May 2020, Plaintiff and Defendant resumed couple's therapy sessions with Dr. Tella, and also began participating in "financial mediation" sessions with Dr. Lynn Halem in order to work towards resolving their financial disputes.

**Defendant's Unlawful Interception of Oral Communications in Plaintiff's Vehicle**

22. Unbeknownst to Plaintiff for several more months, on or about March 20, 2020, Defendant began placing hidden audio recording devices in the vehicle that Plaintiff drove.

23. Upon information and belief, the Defendant has a background in U.S. Army Special Forces Intelligence, and has unique knowledge, skill and ability pertaining to surveillance activity which aided his illicit eavesdropping activity.

24. Defendant's illicit eavesdropping activity coincided with the onset of the global COVID-19 pandemic, which restricted Plaintiff's ability to conduct private conversations to areas of her home and her vehicle, where Defendant was not present, and could not overhear her but for the use of a hidden recording devices.

25. On or about March 20, 2020, Defendant placed an audio recording device in the Chevrolet Tahoe that Plaintiff then drove (the "Tahoe").

26. Defendant left a recording device continuously in the Tahoe through at least April 12, 2020.

27. From March 21, 2020 through March 30, 2020, Defendant recorded audio in the Tahoe twenty-four hours per day, resulting in electronic recordings that were saved in five-hour installments.

28. From March 31, 2020 through April 12, 2020, Defendant appears to have utilized a recording device activated by noise in the area where the device was hidden.

29. Through both recording methods, Defendant indiscriminately recorded each and every oral communication by everyone that took place in the Tahoe during this period without permission or authorization.

30. From March 20, 2020 through April 12, 2020, Defendant secretly obtained approximately 262 audio recordings from the Tahoe while the vehicle was in Plaintiff's possession.

31. The Tahoe recordings range in length from under one minute to over 13 hours.

32. From March 20, 2020 through April 12, 2020, Plaintiff and Defendant were actively engaged in adversarial divorce litigation, and were each represented by counsel.

33. During the period from March 20, 2020 through April 12, 2020, Plaintiff often conducted personal conversations with third-parties and privileged conversations with her own attorneys while in the Tahoe.

34. Defendant knew or should have known that placing a hidden recording device in Plaintiff's vehicle would result in interception of Plaintiff's private communications, particularly during the COVID-19 lockdown that prevented Plaintiff from meeting with third-parties in person or having private conversations in the Cliff Road Home while Defendant was present.

35. Defendant recorded Plaintiff's confidential, privileged oral communications with her divorce attorney, her trusts and estates attorney, and her psychotherapist, and her personal oral communications with her bankers and fiduciaries, her pharmacist, her sister, her then 17-year-old son, her then 24-year-old daughter, and other third-parties.

36. Defendant illicitly recorded communications in which Plaintiff disclosed personal health information, personally identifying information, account passwords, privileged attorney-client communications concerning litigation against Defendant, privileged psychotherapist-patient communications, and numerous private communications with third-parties.

37. Neither Plaintiff nor any third-parties were aware of or authorized and/or consented to the recordings.

38. Plaintiff had a reasonable expectation of privacy in the Tahoe when Defendant secretly placed recording devices therein.

39. Defendant's use of recording devices in the Tahoe without Plaintiff's knowledge, authorization, or consent is a violation of Plaintiff's right to privacy, particularly where Plaintiff conducted certain conversations in the Tahoe to *prevent* any eavesdropping at home, especially when Defendant was present in common areas of the Cliff Road Home.

40. Defendant used information that he had obtained through his unlawful secret recordings against Plaintiff in the then-pending divorce litigation and in his inter-personal dealings with Plaintiff and other family members and business associates.

**Defendant's Unlawful Interception of Oral Communications in the Cliff Road Home**

41. From March 20, 2020 through at least April 8, 2020, Defendant placed hidden recording devices in the kitchen and in Plaintiff's bedroom at the Cliff Road Home, without Plaintiff's knowledge, authorization or consent.

42. Plaintiff and Defendant were separated at this time and resided in different bedrooms and occupied different wings and floors of the Cliff Road Home.

43. Plaintiff considered her bedroom to be a private and secluded space free from intrusion or eavesdropping, including by Defendant.

6

44. Plaintiff and Defendant were actively engaged in litigation in the form of divorce proceedings during this time.

45. Upon information and belief, Defendant placed recording devices in the Cliff Road Home in order to learn and gather private and sensitive information for use against Plaintiff in the divorce litigation, future financial litigation, and to try to manipulate Plaintiff or/and cause Plaintiff emotional distress as leverage in connection with the same.

46. Defendant recorded Plaintiff's private communications in her bedroom, including communications with each of her children about their personal lives, Plaintiff's personal life, and information concerning unrelated third-parties.

47. The noise-activated recording devices that Defendant secretly placed in Plaintiff's bedroom indiscriminately recorded each of Plaintiff's conversations and any noise occurring in the bedroom, including while Plaintiff was sleeping.

48. Defendant recorded Plaintiff's communications in the kitchen with each of her children and third-parties.

49. The kitchen recordings include Plaintiff's communications with her son concerning personal information, and other issues concerning third-parties unrelated to Defendant.

50. Neither Plaintiff nor any other party to the communications gave authorization, consent, or had any knowledge that Defendant was recording their communications at the time.

51. Defendant was not present at the 209 Cliff Road Home when some of these communications occurred, and would not have had the ability to overhear these conversations but for the hidden recording devices.

52. Under the circumstances, Plaintiff had a reasonable expectation of privacy from Defendant in her home, including in the kitchen and her bedroom, at the time that Defendant made the recordings.

53. Plaintiff did not authorize or consent, explicitly or impliedly, to Defendant recording or attempting to record her private communications in her home or the Tahoe vehicle at any point.

**Defendant's Unlawful Recording of Therapy and Mediation Sessions**

54. Unbeknownst to Plaintiff, Defendant began recording the couple's therapy sessions and financial mediation sessions by at least May 8, 2020, without the consent of Plaintiff or the professionals providing these confidential services.

55. Defendant used an audio recording device to record Plaintiff's and Defendant's therapy sessions with Dr. Tella on at least May 8, 12, 15, and 19, 2020, and June 18 and 25, 2020.

56. Defendant used an audio recording device to record financial mediation sessions with Dr. Lynn Halem on at least May 21 and 28, 2020, June 4, 8, and 23, 2020, and July 8, 2020.

57. These therapy sessions were conducted by teleconference call while Plaintiff was located at the Cliff Road Home and Defendant was located from time to time at the family's vacation home in Oak Bluffs, MA. Defendant was known to travel frequently to visit family in Georgia and booked hotel rooms in Newton.

58. Defendant did not reside in the Cliff Road Home at the time that any therapy or financial mediation sessions as described in the preceding paragraphs took place.

59. Upon information and belief, Defendant recorded the private and confidential therapy and financial mediation sessions for the purpose of gaining and then exploiting information

against Plaintiff during future divorce litigation, financial litigation, and to manipulate Plaintiff and/or cause Plaintiff emotional distress in connection with the same.

60. In addition to the couple's therapy sessions to which he was a party, Defendant recorded Plaintiff's confidential, private, and privileged discussions with Dr. Tella, which took place while Plaintiff was in the Tahoe, which are protected by the psychotherapist-patient privilege.

61. On or around August 11, 2020, Plaintiff and Defendant sold the family's Cliff Road Home, and Defendant transferred the $8.3 million proceeds from the sale into his own individual bank account without Plaintiff's knowledge or consent.

**Plaintiff Discovers Defendant's Secret Recordings of Plaintiff's Communications**

62. On August 16, 2020, Plaintiff and her daughter visited the family vacation house in Oak Bluffs, Martha's Vineyard, where Defendant had been residing off and on since April 2020.

63. Defendant was not present when Plaintiff and her daughter went to the family vacation home.

64. When Plaintiff and her daughter attempted to play music over the vacation home's speaker system, Plaintiff opened the iTunes application on a family computer in the home office of the vacation home where Defendant had been living.

65. As soon as she opened iTunes, Plaintiff was shocked to hear her own recorded voice playing through the computer.

66. Plaintiff was even more horrified to realize that the recording playing was from one of her therapy sessions and included intimate details of Plaintiff's life and marriage.

67. Upon closer examination of this latent evidence, Plaintiff discovered that, incredibly, Defendant had created hundreds of files containing recordings of Plaintiff and her

children communicating with each other and third-parties without any party's knowledge, authorization or consent.

68. Plaintiff became extremely distressed upon learning of this gross invasion of her privacy.

69. Plaintiff began to feel anxious and unsafe in her own home and was unsure if Defendant then had recording devices hidden throughout her new home as she learned he had in the Cliff Road Home and the Tahoe.

70. In May 2021, Plaintiff informed Dr. Halem and Dr. Tella that Defendant had improperly and illegally recorded numerous therapy and financial mediation sessions without prior disclosure, authorization, or consent from Plaintiff or either professional.

71. On or around May 11, 2021, with the help of Dr. Tella, Plaintiff confronted Defendant with her knowledge of his secret recordings and use of hidden recording devices.

72. Defendant admitted to recording Plaintiff without her knowledge or consent, and became extremely and visibly uncomfortable, and excused himself from the session with Plaintiff and Dr. Tella.

73. Defendant's unlawful illicit eavesdropping on the Plaintiff was both extreme and outrageous, especially in terms of frequency, duration, location, purpose and intent.

74. Plaintiff has suffered extreme emotional distress since learning that she had been secretly recorded in her own home and vehicle, and that hundreds of hours of her private communications have been intercepted and recorded by Defendant without her knowledge, authorization, or consent.

75. In particular, Plaintiff has suffered from anxiety, depression, panic attacks, and has sought medical and psychotherapy treatment for anxiety and heart related issues. In addition to

feeling unsafe, controlled, and abused, Plaintiff has also endured sustained feelings of paranoia, fear, sleeplessness, concern for her children, concern about the Defendant, his firearms, and what he may do.

76. Plaintiff remains concerned and fearful that she could again be the subject of illegal surveillance and recording by Defendant.

77. Plaintiff has lost the ability to feel safe and secluded in the privacy of her homes, including her vacation home, and her vehicle as a result of Defendant's imposing, aggressive and unauthorized eavesdropping.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE OMNIBUS CRIME CONTROL AND SAFE STREETS ACT OF 1968
### 18 U.S.C. § 2520

78. Plaintiff incorporates by reference the allegations contained in each of the preceding paragraphs as if set forth here in their entirety.

79. Section 2511 of Title 18 of the United States Code prohibits the interception, or attempted interception, of wire, oral, or electronic communications without authorization as provided under the statute.

80. Section 2520 of Title 18 of the United States Code permits a person whose wire, oral, or electronic communications have been intercepted, to bring a civil action and recover actual and/or statutory damages from the person engaging in such interception.

81. Defendant placed hidden audio recording devices in Plaintiff's home and vehicle without Plaintiff's knowledge, authorization or consent.

82. Defendant attempted to indiscriminately intercept all of Plaintiff's oral communications occurring in the places where he hid the recording devices.

83. Defendant recorded and saved private conversations between Plaintiff and third-parties.

84. Each recording of Plaintiff and/or third-parties was made secretly, without any party's knowledge, authorization, or consent.

85. Defendant intercepted and recorded privileged oral counseling sessions between Plaintiff and her psychotherapist and Plaintiff and her attorneys, without the authorization or consent of Plaintiff, legal counsel or the psychotherapist, as applicable.

86. Defendant recorded oral communications between Plaintiff, Defendant, and a psychotherapist providing counseling services, without the authorization or consent of Plaintiff or the psychotherapist.

87. Defendant secretly recorded Plaintiff, her private communications, and their couple's therapy and financial mediation sessions, for the tortious purpose of obtaining private information to use against Plaintiff in divorce litigation, financial litigation, to manipulate and/or to cause Plaintiff emotional distress related to the same.

88. Defendant, who acted with tortious intent, was the only party with knowledge of the secret recording of the private, confidential privileged communications, marriage counseling and financial mediation sessions.

89. Plaintiff has suffered harm as a result of Defendant's multiple violations of 8 U.S.C. §§ 2511 and 2050, including the expenditure of attorney's fees, expert fees and costs.

COUNT II
VIOLATIONS OF ELECTRONIC COMMUNICATIONS PRIVACY ACT
M.G.L. 272 § 99

90. Plaintiff incorporates by reference the allegations contained in each of the preceding paragraphs as if set forth here in their entirety.

91. Section 99 of Chapter 272 of the Massachusetts General Laws prohibits interception of wire and oral communications by secretly hearing or recording such communications without prior authorization or consent of all parties thereto.

92. Section 99(Q) of Chapter 272 permits a person whose communications have been secretly heard or recorded to bring a civil action and recover actual and/or statutory damages from the person engaging in such interception.

93. Defendant used audio recording devices in Plaintiff's home and vehicle, without Plaintiff's knowledge or consent, on at least 24 days.

94. Defendant attempted to indiscriminately intercept all of Plaintiff's oral communications occurring in the places where he hid the recording devices.

95. Defendant's recording devices intercepted and recorded oral communications between Plaintiff and third parties without the knowledge or consent of any party to the communications.

96. Plaintiff has suffered harm as a result of Defendant's multiple violations of M.G.L. c. 272, § 99, including the expenditure of attorney's fees, expert fees and costs.

COUNT III
INTRUSION ON SECLUSION
M.G.L. C. 214, § 1B

97. Plaintiff incorporates by reference the allegations contained in each of the preceding paragraphs as if set forth here in their entirety.

iManageDB1\110201\000002\4128059.v2-7/28/22

98. Defendant intentionally installed recording devices in private areas of Plaintiff's home, including her bedroom and her vehicle, without Plaintiff's knowledge, authorization, or consent.

99. Defendant's actions constituted an intentional invasion of Plaintiff's privacy and her seclusion in her home and vehicle.

100. Defendant's conduct intruded upon Plaintiff's private affairs, including by recording Plaintiff's oral communications with third-parties and recording Plaintiff when she believed she was in solitude.

101. Defendant's placement of recording devices in Plaintiff's home, including her bedroom, and her vehicle, would be a highly offensive intrusion to a reasonable person.

102. Plaintiff found Defendant's placement of recording devices in her home, including her bedroom, and her vehicle, to be a highly offensive intrusion to her privacy and seclusion.

103. Plaintiff has suffered harm as a result of Defendant's intentional and highly offensive intrusion into her private affairs and seclusion.

COUNT IV
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

104. Plaintiff incorporates by reference the allegations contained in each of the preceding paragraphs as if set forth here in their entirety.

105. Defendant placed recording devices in Plaintiff's home and vehicle without her knowledge, authorization, or consent for the purpose of recording Plaintiff's intimate, private communications, and acknowledged doing so.

106. Defendant secretly recorded Plaintiff's therapy sessions with a marriage counselor without knowledge or consent of Plaintiff or the counselor.

107. Defendant knew or should have known that his secret recording of Plaintiff's private communications and confidential therapy sessions without her knowledge, authorization or consent, would cause Plaintiff to suffer emotional distress.

108. Defendant planned to, and did, use private information gained from secretly recording Plaintiff against her, depriving her of her right to confidential, privileged attorney-client communications, and her rights and ability to negotiate fairly or litigate on a level playing-field in a pending or a future divorce proceeding, and/or otherwise fair litigation of her marital and financial rights.

109. Defendant intended, planned to, and did, use private information gained from secretly recording Plaintiff to cause Plaintiff to feel anxious, unsafe, and fearful of his apparent power and ability to manipulate or control her.

110. Defendant's use of hidden recording devices to record Plaintiff in her home, her vehicle, and in confidential, privileged legal consultations or psychotherapy sessions, without her knowledge, authorization or consent, is unlawful, extreme and outrageous conduct that goes well beyond the bounds of common decency and familial and marital society.

111. Plaintiff suffered severe emotional distress as a result of Defendant's unauthorized wiretapping and recording of confidential personal communications, confidential and privileged legal consultations and confidential and privileged psychotherapy sessions in her own home.

## COUNT V
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

112. Plaintiff incorporates by reference the allegations contained in each of the preceding paragraphs as if set forth here in their entirety.

113. Defendant placed recording devices in Plaintiff's home and vehicle without her knowledge, authorization or consent for the purpose of recording Plaintiff's intimate, private communications, and acknowledged doing so.

114. Defendant knew or should have known that his secret recording of Plaintiff's private communications and confidential therapy sessions without her knowledge or consent would cause Plaintiff to suffer emotional distress.

115. Defendant has acknowledged that his secret recordings have caused Plaintiff to suffer severe emotional distress.

116. Defendant acted negligently and carelessly by intruding on Plaintiff's seclusion, privacy, and dignity.

117. Plaintiff has suffered physical manifestations of the emotional distress negligently, carelessly and wantonly inflicted by Defendant.

118. Plaintiff suffered severe emotional distress as a result of Defendant's unauthorized wiretapping and recording of confidential personal communications, confidential and privileged legal consultations and confidential and privileged psychotherapy sessions in her own home.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff, Lynne Charron, respectfully requests the following relief:

A. The Court enter a judgment in favor of Plaintiff on each count of this Complaint;

B. Award Plaintiff compensatory, actual, and/or statutory) and punitive damages, as authorized by law, on each count of this Complaint,

C. Award Plaintiff her attorneys' fees, expert fees and costs, as authorized by law under Counts I and II of this Complaint, and

D. Award Plaintiff any and all further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

          Respectfully Submitted,

          LYNNE CHARRON,

          By her attorneys,

          */s/ William S. Rogers, Jr.*
          William S. Rogers, BBO #549487
          wsrogers@princelobel.com
          Lauren M. Koslowsky, BBO #705541
          lkoslowsky@princelobel.com
          PRINCE LOBEL TYE, LLP
          One International Place, Suite 3700
          Boston, MA  02110
          t. (617) 456-8000
          f. (617) 456-8100

Dated: July 28, 2022